| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV03499638 | D1 CM | 3714376 |

Rule 4 (B) Ohio

Rules of Civil Procedure

```
         RICHARD A SMITH              PLAINTIFF
                VS
VALUE CITY DEPARTMENT STORES, INC.,   DEFENDANT
              ET AL
```

# SUMMONS

```
VALUE CITY DEPARTMENT STORES INC
DBA VALUE CITY
% CSC LAWYERS INCORPORATING   SERVICE
50 WEST BROAD STREET
COLUMBUS OH 43215-0000
```

You have been named defendant in a complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Plantiff's Attorney

```
PETER TURNER
30195 CHAGRIN BLVD-STE 300

CLEVELAND, OH 44124-0000
```

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

```
KENNETH R CALLAHAN
Do not contact judge. Judge's name is given for
attorney's reference only.
```

GERALD E. FUERST
Clerk of the Court of Common Pleas

| DATE | | |
|---|---|---|
| Apr 23, 2003 | By | _____ Deputy |

COMPLAINT FILED   04/18/2003

```
VALUE CITY DEPARTMENT STORES INC
50 WEST BROAD STREET
50 WEST BROAD STREET
COLUMBUS OH 43215-0000
```



DEFENDANT'S EXHIBIT

MSN130



### Case Docket Listing



Case Number: CV-03-499638
Case Title: RICHARD A SMITH vs. VALUE CITY DEPARTMENT STORES, INC., ET AL
Tiff Viewer: AlternaTIFF

| Date | Side | Type | Description | Image |
|---|---|---|---|---|
| 05/02/2003 | D1 | SR | CERTIFIED MAIL RECEIPT NO. 3714376 RETURNED BY U.S. MAIL DEPARTMENT 05/01/2003 VALUE CITY DEPARTMENT STORES INC MAIL RECEIVED AT ADDRESS 04/29/2003 SIGNED BY OTHER. | N/A |
| 05/02/2003 | D2 | SR | CERTIFIED MAIL RECEIPT NO. 3709193 RETURNED BY U.S. MAIL DEPARTMENT 04/29/2003 ACKMAN/JERRY/ MAIL RECEIVED AT ADDRESS 04/28/2003 SIGNED BY OTHER. | N/A |
| 04/24/2003 | D1 | SR | SUMS COMPLAINT(3714376) SENT BY CERTIFIED MAIL. TO: VALUE CITY DEPARTMENT STORES INC 50 WEST BROAD STREET COLUMBUS, OH 43215-0000 | N/A |
| 04/24/2003 | D2 | SR | SUMS COMPLAINT(3709193) SENT BY CERTIFIED MAIL. TO: JERRY ACKMAN 4481 GREENWOLD ROAD SOUTH EUCLID, OH 44121-0000 | N/A |
| 04/23/2003 | D1 | CS | WRIT FEE | N/A |
| 04/22/2003 | D2 | CS | WRIT FEE | N/A |
| 04/18/2003 | N/A | SF | JUDGE KENNETH R CALLAHAN ASSIGNED (RANDOM) | N/A |
| 04/18/2003 | P1 | SF | COMPUTER FEE | N/A |
| 04/18/2003 | P1 | SF | LEGAL RESEARCH | N/A |
| 04/18/2003 | P1 | SF | LEGAL AID | N/A |
| 04/18/2003 | P1 | SF | LEGAL NEWS | N/A |
| 04/18/2003 | P1 | SF | CLERK'S FEE | N/A |
| 04/18/2003 | P1 | SF | DEPOSIT AMOUNT PAID | N/A |
| 04/18/2003 | N/A | SF | CASE FILED | N/A |
| 04/18/2003 | P1 | SR | COMPLAINT WITH JURY DEMAND FILED AND SUMMONS SENT BY CERTIFIED MAIL TO THE DEFENDANT(S). | N/A |

CMSW106

Print Page | Close Window | Disclaimers
For questions/comments please contact cvdock@www.cuyahoga.oh.us

FILED

2003 APR 18  P 2:34

GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| RICHARD A. SMITH<br>3502 Norwood Road<br>Shaker Heights, Ohio 44122 | CASE NO.<br><br>JUDGE |
| Plaintiff, | Judge: KENNETH R CALLAHAN |
| VS. | CV 03 499638 |
| VALUE CITY DEPARTMENT STORES, INC.<br>dba VALUE CITY<br>c/o Csc-Lawyers Incorporating Service<br>50 West Broad Street<br>Columbus, Ohio 43215<br><br>and<br><br>JERRY ACKMAN<br>4481 Greenwold Road<br>South Euclid, Ohio 44121<br><br>Defendants. | |

## COMPLAINT
(Jury Demand Endorsed Hereon)

Plaintiff Richard A. Smith ("Smith"), by and through his undersigned counsel, for his Complaint against Defendants Value City Department Stores, Inc., dba Value City ("Value City") and Jerry Ackman ("Ackman"), states as follows:

1. Mr. Smith is an individual residing in Shaker Heights, Ohio.

2. Upon information and belief, Value City is an Ohio Corporation whose principal

place of business is in Columbus, Ohio. Value City engages, and did engage at all relevant times, in retail business at various locations in the State of Ohio under the name "Value City."

3. Upon information and belief, Ackman is an individual residing in South Euclid, Ohio.

4. Upon information and belief, Value City owns and/or operates Value City department stores in the Cleveland area. One of those stores is located in Euclid, Ohio.

5. On June 11, 2001, Defendant Value City hired Plaintiff Smith as a store manager in training. Upon the conclusion of the training period, Defendant Value City assigned Plaintiff Smith to be the store manager for the Euclid Value City store.

6. At all times relevant hereto, Defendant Ackman was Smith's immediate supervisor and was a district manager for Value City. Defendant Ackman's district included the Euclid Value City store.

7. In or about April 2002, and on several occasions thereafter, Defendant Ackman specifically instructed Plaintiff Smith to terminate "older" employees who were substantially over the age of 40, including a physically disabled employee, solely based on their advanced age. As the workers in question were adequately performing their jobs, Plaintiff Smith refused to do as instructed.

8. In August 2002, Plaintiff Smith contracted West Nile Virus and had to be hospitalized. As a result, he was forced to take a leave from work and did so from September 3, 2002 to October 14, 2002.

9. Defendant Value City treated Plaintiff Smith's absence as a leave pursuant to The Family and Medical Leave Act of 1993 ("FMLA"). A copy of the notice from Defendant Value

City to Plaintiff Smith, finding him eligible for such leave, is attached hereto as Exhibit "A."

10. On October 14, 2002, Plaintiff Smith returned to work. Upon his return to work, Plaintiff was subjected to a change in his working conditions, including but not limited to, store audits at a far greater frequency than before his leave and a dramatic increase in Defendant Ackman's scrutiny of Plaintiff Smith and his store. Furthermore, Defendant Ackman opined on several occasions that he was concerned that Plaintiff, as a result of his illness, was or would become a financial burden to Defendant Value City.

11. On October 15, 2002, Plaintiff Smith was improperly put on "written corrective action" by Defendant Ackman. The purported basis for the action was "inconsistent operating standards" in the Euclid store. A copy of the corrective action report is attached hereto as Exhibit "B."

12. On November 15, 2002, Defendant Ackman improperly gave Plaintiff Smith his "final corrective action report," a copy of which is attached hereto as Exhibit "C." That report indicated that Plaintiff Smith was initially placed on "corrective action" based on "inconsistent operating standards" and the "unacceptable performance" of Plaintiff Smith's store. The report further indicated that Mr. Smith would be terminated from employment if the stated deficiencies were not corrected.

13. On December 11, 2002, Plaintiff Smith's employment was terminated based on the alleged failure to correct and/or improve the Euclid store's "operating standards." A copy of the "corrective action report" is attached hereto as Exhibit "D."

14. Throughout his employment with Defendant Value City, Plaintiff Smith and the Euclid store which he managed, consistently met or exceeded the performance requirements of

-3-

Defendant Value City.

15. At the time of his termination, Plaintiff Smith was earning an annual salary of approximately $76,500.00 plus bonuses and benefits.

## COUNT I
(Ohio Civil Rights Act Prohibiting Age Discrimination Under O.R.C. Chapter 4112)
[Retaliation for Engaging in Oppositional Activity]

16. Plaintiff Smith incorporates the allegations of paragraphs 1 through 15 above as if fully rewritten herein.

17. Plaintiff Smith was qualified for the position as manager of the Value City Euclid store.

18. Defendants terminated Plaintiff Smith's employment based, at least in part, in retaliation for his refusal to terminate the "older" employees in Defendant's Euclid store. Such termination would have been a blatant violation of Ohio law proscribing employment discrimination on the basis of age.

19. Based on the foregoing, Defendants knowingly, willfully and/or maliciously violated the age discrimination provisions set forth in Chapter 4112.02(I) and/or R.C. 4112.99 of the Ohio Revised Code, causing Plaintiff Smith to suffer loss of earnings, lost advancement opportunities, emotional distress and other pecuniary and non-pecuniary damages.

## COUNT II
(Ohio Civil Rights Act Prohibiting Age Discrimination Under O.R.C. Chapter 4112)
[Direct Discrimination on the Basis of Age]

20. Plaintiff Smith incorporates the allegations of paragraphs 1 through 19 above as if fully rewritten herein.

21. Plaintiff Smith was born on May 7, 1955 and was forty-seven (47) years old at the

-4-

time of the termination of his employment by Defendant Value City Stores.

22. Plaintiff Smith was qualified for the position as manager of Defendant's Value City Euclid store.

23. Defendants terminated Plaintiff Smith's employment based, at least in part, on his own age. Defendants replaced Plaintiff with an individual under the age of 40 with less work experience and qualifications for the management position at the Value City Euclid store.

24. Based on the foregoing, Defendants knowingly, willfully and/or maliciously violated the age discrimination provisions set forth in R.C.§§ 4112.02, 4112.14 and/or 4112.99 of the Ohio Revised Code, causing Plaintiff Smith to suffer loss of earnings, lost advancement opportunities, emotional distress and other pecuniary and non-pecuniary damages.

### COUNT III
(Wrongful Termination – Violation of Public Policy)

25. Plaintiff Smith incorporates the allegations of paragraphs 1 through 24 above as if fully rewritten herein.

26. The termination of Plaintiff Smith's employment was wrongful in that it was in violation of the clearly stated public policy in Ohio prohibiting adverse employment decisions against persons based on discrimination and retaliation.

27. Defendants terminated Plaintiff Smith's employment based in part on his refusal to participate in unlawful age and disability discrimination.

28. As a result of the wrongful termination of Plaintiff Smith in violation of public policy, Mr. Smith has suffered loss of earnings, lost advancement opportunities, emotional distress and other pecuniary and non-pecuniary damages.

## COUNT IV
(The Family and Medical Leave Act of 1993)

29. Mr. Smith incorporates the allegations of paragraphs 1 through 28 above as if fully rewritten herein.

30. Jurisdiction in conferred on this Court for this Count by 29 U.S.C. 2617(a)(2).

31. At all times relevant hereto, Defendant Value City was an "employer" as defined in 29 U.S.C. 2611(4).

32. At the commencement of Plaintiff Smith's leave of absence due to his illness, he was an "eligible employee" as defined in 29 U.S.C. 2611(2).

33. During his leave of absence, Plaintiff Smith had a "serious health condition" as defined in 29 U.S.C. 2611(11).

34. Plaintiff's leave constituted his exercise of a protected right under FMLA.

35. Upon Plaintiff's return from his leave, he was qualified and able to perform the essential functions of his position as manager of the Value City Euclid store.

36. Upon Plaintiff's return from his leave, he was entitled to be returned to the same position he held when the leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.

37. Upon Plaintiff's return from his leave, Defendants interfered with, restrained, or denied the exercise of or the attempt to exercise, the rights provided to Plaintiff under FMLA by: (a) discriminating and/or retaliating against him for taking FMLA leave; (b) adversely changing the terms and conditions of Plaintiff's employment; and/or (c) discharging Plaintiff for taking FMLA leave or based in part on the unfounded assumption that Plaintiff's illness would adversely affect his job performance and/or cause an undue burden to Defendants.

38. Plaintiff Smith was adversely affected by the discrimination and retaliation referenced above.

39. Other similarly situated employees of Defendant Value City who did not exercise or attempt to exercise their FMLA rights were treated more favorably than Plaintiff was treated.

40. As a result of Defendants' blatant and malicious actions in violation of FMLA, Plaintiff has suffered lost earnings and other damages and is entitled to the relief provided under FMLA.

WHEREFORE, Plaintiff Richard A. Smith demands judgment in his favor against Defendants, jointly and severally, in an amount in excess of $25,000.00, plus punitive damages as appropriate, together with an order requiring Defendants to pay Plaintiff's attorneys fees, expenses and costs incurred herein and for such other and further relief as may be deemed just and equitable under the circumstances.

Respectfully submitted,

Peter Turner (0028444)
Stephen D. Dodd (0072658)
CONWAY, MARKEN, WYNER,
 KURANT & KERN, Co., L.P.A.
30195 Chagrin Blvd., Suite 300
Cleveland, Ohio 44124
(216) 292-3300
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff Richard A. Smith demands a jury trial on all issues.

Peter Turner

-7-

**Employer Response to Employee
Request for Family or Medical Leave**

U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

## Family Medical Leave Act of 1993

Date: 9-26-02

To: Richard Smith 170 484976 (107)

From: Value City Department Stores/Schottenstein Stores Corporate Benefit Office

Subject: **REQUEST FOR FAMILY/MEDICAL LEAVE**

On 9-16-02, you notified us of your need to take family/medical leave due to:

☐ The birth of a child, or the placement of a child with you for adoption or foster care; or
☒ A serious health condition that makes you unable to perform the essential functions of your job; or
☐ A serious health condition affecting your ☐ spouse, ☐ child, ☐ parent, for which you are needed to provide care.

You notified us that you need this leave of absence beginning on _____, and that you expect to return to work on or about _____.

Except as explained below, you have a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period under the reasons listed above. Also, your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continue to work, and you must be reinstated to the same or an equivalent position with the same pay, benefits, and terms & conditions of employment on your return from leave.

This is to inform you that

1. You are ☒ eligible ☐ not eligible for leave under the FMLA and its entitlement.
2. If you are not eligible for leave under FMLA you ☐ may ☐ may not be eligible for a 30-day personal leave based on your personal serious health condition that makes you unable to perform the essential functions for your job. This personal leave is not protected under the FMLA guidelines.
3. The requested leave ☒ will ☐ will not be counted against your annual FMLA leave entitlement.
4. You ☒ will ☐ will not be required to furnish medical certification of a serious health condition. If required, you must furnish certification by _Received_ (must be at least 15 days from the date of the notification of the need for the leave), or we may delay the commencement of your leave until after the certification is submitted.
5. We ☒ will ☐ will not require that you substitute accrued Paid Time Off (PTO) for unpaid FMLA leave.
6. We ☐ will ☒ will not require that you substitute earned or accrued Vacation for unpaid FMLA leave.

Page 1 of 2

**EXHIBIT A**

7. If you normally pay a portion of the premiums for your health insurance, these payments will continue during the period of FMLA leave. Arrangements for payment will be discussed with you, and it is agreed that you will make premium payments as follows:

☐ Weekly ☒ Semi-monthly ☐ Monthly

8. You have a minimum 30-day grace period in which to make premium payments. If payment is not made timely, your group health insurance will be canceled.

9. If you do not return to work following FMLA for a reason other then the continuation, recurrence, or onset of a serious health condition which would entitle you to FMLA, or other circumstances beyond your control, you ☒ will ☐ will not be required to reimburse the Company for its share of health premiums paid on your behalf during your FMLA leave.

10. You ☒ will ☐ will not be required to present a fitness-for-duty certificate prior to being restored to employment. If such certification is required but not received, your return to work may be delayed until certification is provided.

11. You ☐ are ☒ are not a "Key Employee" as described in Section 825.217 of the FMLA regulations. If you are a key employee, restoration to the company may be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to us as discussed in Section 825.217. We ☐ have ☐ have not determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us.

12. You ☒ will ☐ will not be required to furnish us with periodic reports every _Upon Request_ of your status and intent to return to work. If the circumstances of your leave change and you are able to return to work earlier then the date indicated on your Request for FMLA Leave form, you ☒ will ☐ will not be required to notify us at least one payroll period prior to the date you intend to report to work.

2

Page 2 of 2



# CORRECTIVE ACTION REPORT

Store #-Location __107 - Euclid__

Name: __Richard Smith__   Position: __Store Manager__   DOH: __6-11-01__

- ☐ Verbal   ☑ Written   ☐ Final   ☐ 1st & Final
- ☐ Follow-Up   ☐ Remove from Corrective Action   ☐ Termination

**1. Describe the specific performance and/or behavior problem(s), including the dates of and previous discussions about this matter.**

Throughout the year Rick has been talked to about inconsistent operating standards in his store as evidenced by his visitation and secret shopper scores. On August 24, 2002, while returning from Erie, PA, the AM paid a surprise visit. There is no MOD visible and no supervision up front, there were lines at the service desk, no one was present in jewelry department, Store Manager was in his office and stated he is the one watching jewelry, return racks not being used properly, pallets on the floor, ads missing and recovery not being done. Some of these same issues were present on Sto. tation and Secret Shopper reports and is not in compliance with our minimum store operating standards. In addition, during the last few weeks in August several managers and

**2. Describe the corrective action the associate must take in order to improve performance and/or correct behavior problem(s).**

Rick must immediately correct the associate relations in his store and his attitude about Value City. Rick must be approachable by his associates and involved in all performance issues as well as on the floor most of the day interacting and dealing with the associates and managers. Rick must also maintain the minimum store operating standards, backroom/ems standards and customer service initiatives of the company everyday. Rick cannot allow the store to operate to the inconsistent standards that has been noted.

**3. What will occur if the associate does or does not improve performance and/or correct the identified behavior problem(s)?**

Termination will occur if there are any further performance or associate relations issues.

**4. Follow-up meeting date to review progress.**   ☑ 30 Days   ☐ 60 Days   ☐ 90 Days

**5. Associate comments.**
I recall on 8/21 I left the front lines to handle no urgent issue reporting my points to the office where Mr. Pelgrin covered. I was out and was on the front prior to and after he left. I was really available, but there was late closer for the SD.

Manager: _[signature]_   Date: 9/2/02

Associate: _[signature]_   Date: 10-X-02

*Associate's signature acknowledges that the above information has been reviewed with him/her, not necessarily that the associate agrees with any part of the Corrective Action*

WHITE COPY - Associate Personnel File   YELLOW COPY - Associate   PINK COPY - Human
(*Stores to Regional Manager; Corporate to Corporate HR; Distribution Center to DC HR Ma

**EXHIBIT B**



# CORRECTIVE ACTION REPORT

Store #-Location __107- EUCLID__

Name: __RICHARD SMITH__  Position: __STORE MANAGER__  DOH: __6-11-01__

☐ Verbal   ☑ Written   ☐ Final   ☐ 1ST & Final
☐ Follow-Up   ☐ Remove from Corrective Action   ☐ Termination

1. Describe the specific performance and/or behavior problem(s), including the dates of and previous discussions about this matter.

ASSOCIATES APPROACHED THE DISTRICT MANAGER WITH CONCERNS ABOUT MR. SMITH AND IS ASSOCIATE RELATIONS. THESE INDIVIDUALS INDICATED THAT RICK WAS NOT ADDRESSING PERFORMANCE ISSUES, THAT HE WAS UNAPPROACHABLE AND THEY WERE TOLD NOT TO APPROACH HIM W/ ITR ISSUES, THAT RICK SPENDS MOST OF HIS TIME IN THE OFFICE AND IS NOT INVOLVED IN MS OR CUSTOMER SERVICE AT THE FRONT LINES, THAT RICK COMES IN BETWEEN 7-8AM AND GOES AT 4:30-5PM. IT WAS ALSO REPORTED TO ME THAT RICK MADE THE COMMENT THAT "THIS JOB IS BENEATH ME" AND "I WOULD LEAVE BUT NO ONE WILL PAY ME WHAT VALUE CITY DOES."

2. Describe the corrective action the associate must take in order to improve performance and/or correct behavior problem(s).

3. What will occur if the associate does or does not improve performance and/or correct the identified behavior problem(s)?

4. Follow-up meeting date to review progress.   ☐ 30 Days   ☐ 60 Days   ☐ 90 Days

5. Associate comments.

Some of these statements made by Associates in the store are not true. There is an undermining within the store between certain people that I will address.

Manager: _[signature]_   Date: __9/2/02__
Associate: _[signature]_   Date: __10-15-02__

(Associate's signature acknowledges that the above information has been reviewed with him/her, not necessarily that the associate agrees with any part of the Corrective Action)

WHITE COPY - Associate Personnel File   YELLOW COPY - Associate   PINK COPY - Human Resources *
(*Stores to Regional Manager; Corporate to Corporate HR; Distribution Center to DC HR Manager)

PD-6 10.97 REV. 10.98

# VALUE CITY Department Stores Inc.

## CORRECTIVE ACTION REPORT
Store #-Location _____

Name: __Richard Smith__   Position: __Store Manager__   DOH: __6-11-01__

☐ Verbal   ☐ Written   ☑ Final   ☐ 1ST & Final

☐ Follow-Up   ☐ Remove from Corrective Action   ☐ Termination

---

**1. Describe the specific performance and/or behavior problem(s), including the dates of and previous discussions about this matter.**

ON OCTOBER 15TH 2002, RICK WAS PUT ON CORRECTIVE ACTION DUE TO INCONSISTENT OPERATING STANDARDS AS WELL AS UNACCEPTABLE PERFORMANCE TO STORE MINIMUM OPERATING STANDARDS AND BACK ROOM STANDARDS. ON 10/25/2002, 11/6/2002 AND 11/15/2002 SOME OF THOSE SAME STANDARDS ARE STILL BELOW ACCEPTABLE PERFORMANCE SUCH AS: SIZING, RECOVERY, AD SIGNAGE AND BACKROOM MAINTENANCE. THE HARDLINES AND SOFTLINES MERCHANDISE DIRECTIVES ARE ALSO BELOW STANDARDS.

**2. Describe the corrective action the associate must take in order to improve performance and/or correct behavior problem(s).**

RICK MUST IMMEDIATELY CORRECT THE MINIMUM STORE OPERATING STANDARDS, BACKROOM STANDARDS AND MERCHANDISE DIRECTIVES TO ACCEPTABLE PERFORMANCE. RICK CANNOT ALLOW HIS STORE TO CONTINUE TO OPERATE TO THE UNACCEPTABLE STANDARDS THAT HAVE BEEN NOTED.

**3. What will occur if the associate does or does not improve performance and/or correct the identified behavior problem(s)?**

TERMINATION

**4. Follow-up meeting date to review progress.**   ☑ 30 Days   ☐ 60 Days   ☐ 90 Days

**5. Associate comments.**

---

Manager: _____   Date: 11-15-02

Associate: _____   Date: 11-15-02

*(Associate's signature acknowledges that the above information has been reviewed with him/her, not necessarily that the associate agrees with any part of the Corrective Action)*

WHITE COPY - Associate Personnel File   YELLOW COPY - Associate   PINK COPY - Human...
(*Stores to Regional Manager; Corporate to Corporate HR; Distribution Center to DC HR M...)

PD-5  10.97  REV. 10.98

EXHIBIT C



**Value City Department Stores Inc.**

# CORRECTIVE ACTION REPORT
Store #-Location __107- Euclid__

Name: __Richard Smith__  Position: __Store Manager__  DOH: __6-11-01__

☐ Verbal  ☐ Written  ☐ Final  ☐ 1ST & Final
☐ Follow-Up  ☐ Remove from Corrective Action  ☒ Termination

1. Describe the specific performance and/or behavior problem(s), including the dates of and previous discussions about this matter.

On October 15th Richard was put on written corrective action as a result of previous visitations and conversations for failure to maintain minimum store operating standards as well as poor leadership skills and associate relations. A final written corrective action follow-up was done on 11/15/02. Visits by District Manager on 10/25, 11/6, 11/15, 12/6 and 12/11 have indicated little or no

2. ~~Describe the corrective action the associate must take in order to improve performance and/or correct behavior problem(s).~~

improvement. The minimum operating standards regarding store recovery, ad sets, sizing and general housekeeping are still at unacceptable levels.

3. What will occur if the associate does or does not improve performance and/or correct the identified behavior problem(s)?

Termination - Effective 12/11/02

4. Follow-up meeting date to review progress.  ☐ 30 Days  ☐ 60 Days  ☐ 90 Days

5. Associate comments.

Manager: _____  Date: __12/11/02__
Associate: __Refuses to sign__  Date: _____

*(Associate's signature acknowledges that the above information has been reviewed with him/her, not necessarily that the associate agrees with any part of the Corrective Action.)*

WHITE COPY - Associate Personnel File   YELLOW COPY - Associate   PINK COPY - Human
(*Stores to Regional Manager; Corporate to Corporate HR; Distribution Center to DC HR Mar)

D-E  10.97  REV. 10.98

**EXHIBIT D**